The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MALAKHI VERLEY, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

UNITED NATURAL FOODS, INC., a Delaware corporation, *et al*.,

      Defendants.

Case No. 3:25-cv-5846-BJR

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

## I.    INTRODUCTION

Plaintiff Malakhi Verley ("Plaintiff") filed this putative class action against United Natural Foods, Inc., United Foods West, Inc., UNFI Distribution Company, LLC, and Centralia Holdings, LCC (collectively, "UNFI"), alleging wage and hour abuses under Washington law. Dkt. No. 1, Ex. 1. Currently before the Court is UNFI's motion to compel arbitration, which Plaintiff opposes. Dkt. Nos. 14 and 27. Having reviewed the motion, response, and reply thereto, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 1

## II.    BACKGROUND

UNFI is in the wholesale food distribution business. Dkt. No. 17 "Yarton Dec." at ¶ 1. It purchases goods from suppliers that are located both within and outside Washington State. *Id*. at ¶ 2. The goods UNFI receives from its suppliers are not purchase directly by UNFI's customers; instead, the goods are stored as inventory in UNFI's distribution centers, where they remain for days, weeks, or even a year before they are used to fulfill a customer order. *Id*. When goods arrive at a UNFI distribution center, employees of a third-party company—not UNFI—unload the shipments. *Id*. at ¶ 3. After unloading is complete, UNFI employees assume responsibility for the goods. Employees known as "Receivers" inspect, organize, and tag the products and other employees referred to as "Lift Operators" transport the goods to designated storage locations within the distribution center. *Id*. When a UNFI customer places an order, the order is assigned to an "Order Selector" who retrieves the product from storage, moves it to the loading dock, where "Loaders" load the product onto trucks for delivery. *Id*. at ¶ 4. According to UNFI, the majority of deliveries are same-day to customer in Washington. *Id*.

Plaintiff was employed by UNFI at its distribution center in Centralia, Washington, from April 25, 2023, through January 15, 2024. During that time, he worked as both an "Order Selector" and a "Lift Operator." *Id*. at ¶ 5. Plaintiff alleges that as part of his job duties he packed and prepared products for shipment within Washington, throughout the United States, and internationally. Dkt. No. 23 "Verley Dec." at ¶ 12. He specifically recalls preparing products for shipment to Alaska and South America because he had to prepare "special stickers" related to customs for those shipments. *Id*. at ¶ 14.

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 2

The parties agree that Plaintiff was required to attend a new employee orientation when he was hired.[1] The Human Resources Department at Centralia Holdings conducted the orientation, which included a slide presentation, an opportunity for questions, and completion of onboarding paperwork. Dkt. No. 25 ("Whalen Decl.") ¶ 3. UNFI asserts that during orientation all new hires receive a three-page standalone document titled "UNFI Mutual Arbitration Agreement" ("the Arbitration Agreement"). Dkt. No. 18 ("Juarez Decl.") ¶ 4. UNFI further asserts that this is the only version of the Arbitration Agreement used at Centralia Holdings and at all other company locations. *Id*. The Arbitration Agreement states that it is governed by the Federal Arbitration Act ("FAA"), requires that any covered dispute be administered by the American Arbitration Association ("AAA"), and purports to cover legal claims related to an employee's employment with UNFI. *Id*. at Ex. A. According to UNFI, the Arbitration Agreement is discussed during the slide presentation, and new hires are asked to sign it at the conclusion of the orientation. Whalen Decl. ¶¶ 3–4. UNFI states that it is company practice to provide employees with the complete Arbitration Agreement for signature, but that when Plaintiff signed his agreement, only the signature page was placed in his personnel file. Juarez Decl. ¶ 5.

Plaintiff acknowledges that he completed paperwork during orientation but "does not recall exactly what [he] signed." Verley Decl. ¶ 9 (stating that he signed "more than twenty documents" during orientation). Plaintiff further states that he does not recall signing the Arbitration Agreement and that he "did not even know what an arbitration agreement was until it came up in [this] lawsuit." *Id*. ¶ 10.

---

[1]Plaintiff alleges that the orientation occurred over three days while UNFI claims it happened over approximately five hours on April 25, 2023. *See* Dkt. No. 23 "Verley Dec." at ¶¶ 5-9 (describing the orientation as occurring over a period of three days); Dkt. No. 25 "Whalen Dec." at ¶¶ 3-5 (stating that the orientation occurred on April 25, 2023 from 10:00am to 3:30pm).

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 3

On May 30, 2025, Plaintiff filed an unverified putative class action complaint against UNFI, alleging (1) failure to provide rest and meal periods in violation of the Washington Industrial Welfare Act (RCW 49.12.020); (2) failure to pay overtime wages, failure to accrue and allow the use of paid sick leave, and failure to pay wages in the amount to which the employee was entitled, in violation of the Washington Minimum Wage Act (RCW 49.46); (3) unlawful deductions and rebates and willful withholding of wages in violation of the Wage Rebate Act (RCW 49.52); and (4) failure to pay all wages due at the time of termination in violation of RCW 49.48.010. *See generally*, Dkt. No. 1, Ex. 1. Plaintiff originally filed the action in Lewis County Superior Court. In September 2025, UNFI removed the case to this Court under the Class Action Fairness Act. Dkt. No. 1 at 3. With the instant motion, UNFI contends that Plaintiff's employment-related claims are subject to arbitration under the Arbitration Agreement and moves to compel arbitration on that basis.

## III.    DISCUSSION

### A.    Framework of the Court's Analysis under the Federal Arbitration Act

The Federal Arbitration Act ("FAA") generally "requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). When a party moves to compel arbitration, courts must determine two gateway issues: "'(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Johnson v. Walmart, Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Arbitration remains fundamentally "a matter of contract," and parties cannot be compelled to arbitrate disputes they did not agree to submit to arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). When parties clearly and unmistakably

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 4

agree to delegate arbitrability questions to an arbitrator through a delegation clause, courts must honor that agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). However, courts retain the threshold duty to determine whether a valid arbitration agreement was formed before any delegation can occur. *Id.*

### B.    Whether the FAA Governs the Parties' Dispute

UNFI contends that the Arbitration Agreement between it and Plaintiff is governed by the FAA. The Ninth Circuit has made it clear that when deciding a motion to compel pursuant to the FAA, "the district court must first consider whether the agreement at issue is of the kind covered by the FAA." *In re Dusen*, 654 F.3d 838, 844-845 (9th Cir. 2011) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). "[F]or the FAA to apply, the party seeking to compel FAA arbitration must show the existence of a written agreement that contains an arbitration clause and affects interstate commerce." *Phillips v. Swedish Health Servs.*, 567 P.3d 625, 630 (Wn. App. 2025) (quotations omitted). The standard for determining whether a contract "affects interstate commerce" is interpreted broadly, extending to any contract within the full reach of Congress's power under the Commerce Clause. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

UNFI argues that the FAA clearly governs Plaintiff's claims because his signature on the Agreement evidences the existence of a valid arbitration agreement and there is no dispute that UNFI's distribution business affects interstate commerce. Plaintiff counters that the FAA does not apply to his claims because UNFI has not established that a written arbitration agreement exists and, even if one did, Plaintiff's claims are exempt from coverage pursuant to the transportation workers exemption under Section 1 of the FAA.

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 5

**1.     Whether Plaintiff assented to the terms of the Arbitration Agreement**

As the party moving to compel arbitration, UNFI bears the burden of proving by a preponderance of the evidence that a valid arbitration agreement exists between the parties. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Plaintiff contends that no valid agreement exists because UNFI failed to establish that he signed or otherwise assented to the Arbitration Agreement. This argument challenges contract formation—a gateway issue the Court must resolve before compelling arbitration. *See Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 299–300 (2010); *see also Goggins v. Amazon.com, Inc.*, 2025 WL 2782872, at *5 (W.D. Wash. Sept. 30, 2025).

The Court concludes that UNFI has met its burden. UNFI submitted Plaintiff's wet-ink executed signature page, accompanied by sworn declarations from human resources personnel who authenticated the document, described how it was presented and collected during onboarding, confirmed that it was maintained in the ordinary course of business, and attested that the signature page corresponded to the full three-page Arbitration Agreement. UNFI further provided sworn testimony that Plaintiff attended a full-day new hire orientation at which the Arbitration Agreement was discussed, that he was given an opportunity to review the Agreement, and that he could ask questions before signing it.

In response, Plaintiff speculates that he may have been given only the signature page of the Agreement to review and sign. He offers no evidence to support this theory. Plaintiff does not dispute the authenticity of his wet signature, does not deny that he signed documents during orientation, and does not dispute that he attended the orientation or that the Arbitration Agreement was discussed. He admits that he "filled out paperwork" and "signed documents" during onboarding. Verley Dec. ¶¶ 7–9. At most, Plaintiff asserts that he does "not recall signing an

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 6

arbitration agreement." *Id*. ¶ 10. A lack of recollection, standing alone, does not create a genuine dispute of material fact where the record contains authenticated documentary evidence and sworn testimony establishing assent. *See, e.g., Simpson v. Inter-Con Sec. Sys., Inc*., 2013 WL 1966145, at *5 (W.D. Wash. May 10, 2013) ("His mere assertion that he does not remember signing the agreement is insufficient to create a genuine issue of material fact."); *Czerwinski v. Pinnacle Prop. Mgmt. Servs*., LLC, 2019 WL 2750183, at *5 (Wash. Ct. App. July 1, 2019) (lack of recall insufficient to controvert evidence of signature).

Plaintiff also identifies irregularities in UNFI's initial production of the signed Arbitration Agreement during pre-discovery exchanges. UNFI, however, has explained through sworn declarations how those administrative errors occurred and how they were corrected through the meet-and-confer process. Those issues do not undermine the evidentiary record establishing formation. The uncontradicted evidence shows: (1) Plaintiff's authenticated wet-ink signature; (2) sworn testimony linking that signature to the full Arbitration Agreement; and (3) consistent onboarding procedures requiring execution of the Arbitration Agreement as a condition of employment, described by human resources personnel with personal knowledge and supported by business-record foundations. On this record, Plaintiff has not raised a genuine issue of material fact as to contract formation. UNFI has therefore established by a preponderance of the evidence that Plaintiff assented to the Arbitration Agreement.

### 2.    Whether the Transportation Workers Exemption applies

Plaintiff argues that even if he assented to the Arbitration Agreement, it does not govern his claims because he falls within the FAA's transportation-worker exemption. Section 1 of the FAA excludes from coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The party

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 7

invoking the exemption bears the burden of establishing that it applies. *See Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024). In *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022), the Supreme Court articulated the governing framework for determining whether a person falls within the transportation-worker exemption. The analysis proceeds in two steps. First, the court must define the relevant "class of workers" to which the plaintiff belongs. *Id*. at 455. Second, the court must determine whether that class of workers is "engaged in foreign or interstate commerce." *Id*. Critically, the inquiry focuses on "the actual work that the members of the class, as a whole, typically carry out," not on the employer's general business model. *Id*. at 456.

The exemption applies only to workers who are actively engaged in the transportation of goods or passengers across borders, or who play a direct and necessary role in the free flow of goods in interstate commerce. *See id*.; *Rittmann v. Amazon.com, Inc*., 971 F.3d 904, 915 (9th Cir. 2020). Interstate transportation must be central to the class's job duties; it is not enough that interstate commerce is merely incidental or tangential to their work. *See Capriole v. Uber Technologies, Inc*., 7 F.4th 854, 865 (9th Cir. 2021). Nor does the analysis turn on whether a particular plaintiff personally crossed state lines. Instead, the question is whether the class of workers, as defined by the work they perform, is engaged in the interstate transportation of goods or passengers. *See In re Grice*, 974 F.3d 950, 956 (9th Cir. 2020).

### a.    The relevant class of workers

Plaintiff worked as an Order Selector and Lift Operator at UNFI's Centralia warehouse. His duties included gathering items, packaging products, staging pallets, and applying shipping labels, including labels for shipments destined for Alaska or outside the United States. The relevant

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 8

class of workers is therefore warehouse order selectors and lift operators who pick, pack, stage, and label goods within a distribution center.

### b.     The class is not "engaged in" interstate transportation

The dispositive question is whether the class of warehouse Order Selectors and Lift Operators is "actively engaged in transportation of goods across borders" or plays a "direct and necessary role" in such transportation. *Saxon*, 596 U.S. at 458. The record reflects that UNFI's operations involve two distinct commercial transactions. First, UNFI purchases goods from suppliers. Those goods are shipped to UNFI's warehouse, where they are unloaded by third-party personnel and stored as UNFI-owned inventory. The products may remain in storage for days, weeks, or up to a year before resale. At that point, UNFI—not its downstream customers—is the purchaser, and the goods have reached their final destination for purposes of the supplier-to-UNFI shipment. As a Lift Operator, Plaintiff moved this inventory within the Centralia distribution center after the goods had reached this final destination. Second, UNFI sells goods from its stored inventory to customers. As an Order Selector, Plaintiff gathered items purchased from inventory, packaged them, and staged them at the loading docks for later transport. He did not transport goods across state lines, load vehicles as part of an ongoing interstate shipment, or otherwise participate in the physical movement of goods across borders.

Although some goods Plaintiff handled were ultimately shipped interstate or internationally, the exemption does not turn on whether goods previously moved in interstate commerce or would later do so. *See Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (2020) (workers must be connected "not simply to the goods, but to the act of moving those goods across state or national borders"). Rather, the inquiry focuses on whether interstate transportation is a central and defining feature of the class's work. *See Capriole v. Uber Technologies, Inc.*, 7 F.4th

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 9

854, 865 (9th Cir. 2021). Here, the goods had come to rest as UNFI inventory before Plaintiff handled them as a Lift Operator. His role as an Order Selector was to fulfill orders from stored inventory for later shipment pursuant to separate customer transactions. Both roles are distinct from participating in a continuous interstate journey. Unlike the last-mile delivery drivers in *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), or the cargo loaders in *Saxon*, Plaintiff did not complete an interstate shipment or load goods as part of an ongoing cross-border transfer. His work occurred after the interstate leg had concluded and before any subsequent shipment began.

Plaintiff emphasizes that he applied customs stickers and shipping labels to goods destined for Alaska and international locations. That fact does not alter the analysis. The relevant question is not whether goods ultimately crossed state or national borders, but whether the class of workers is engaged in transporting them across those borders. *See Saxon*, 596 U.S. at 456–58. Applying labels or customs documentation to goods that have already come to rest in a warehouse is a preparatory warehouse function, not interstate transportation itself. The ultimate destination of certain shipments reflects downstream commercial activity, not the nature of the class's work.

On this record, interstate transportation is not a central or defining feature of the work performed by warehouse Order Selectors and Lift Operators. Plaintiff therefore has not carried his burden of demonstrating that he belongs to a class of workers "engaged in foreign or interstate commerce" within the meaning of § 1. The transportation-worker exemption does not apply, and the FAA governs the parties' arbitration agreement.

**C.      Whether Other Contract Defenses Invalidate the Arbitration Agreement**

Having determined that Plaintiff assented to the terms of the Arbitration Agreement and that the Agreement is governed by the FAA, the Court must next address Plaintiff's claim that the

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 10

Agreement is unenforceable because it is both procedurally and substantively unconscionable. *See* 9 U.S.C. § 2 (written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of may contract").

### 1.    Whether the Arbitration Agreement is procedurally unconscionable

Under Washington law, a contract may be unenforceable if it is either procedurally or substantively unconscionable. *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1258-59 (9th Cir. 2005). A contract is procedurally unconscionable if the plaintiff lacked a "meaningful choice." *Romney v. Franciscan Medical Group*, 349 P.3d 32, 38 (Wn. App. 2015). In assessing procedural unconscionability, courts consider the circumstances surrounding formation, including "the manner in which the contract was created, whether both parties had a reasonable opportunity to understand the terms of the agreement, and whether important terms were buried lot of fine print." *Mayne v. Monaco Enterprises, Inc.*, 361 P.3d 264, 267 (Wn. App 2015). "At minimum, an employee who asserts an arbitration agreement is procedurally unconscionable must show some evidence that the employer refused to respond to [his] questions or concerns, placed undue pressure on [him] without providing [him] with a reasonable opportunity to consider its terms, and/or that the terms of the agreement were set forth in such a way that an average person could not understand them." *Zuver v. Airtouch Communications, Inc.*, 103 P.3d 753, 761 (Wash. 2004).

Plaintiff does not allege that any of these circumstances were present. UNFI, by contrast, submits sworn testimony that Plaintiff was presented with the Arbitration Agreement at the beginning of new-hire orientation, that the document was discussed during orientation, that he was given an opportunity to ask questions, and that he signed the agreement thereafter. Plaintiff offers no evidence that he was rushed, denied an opportunity to review the agreement, or prevented from seeking clarification.

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 11

Plaintiff nevertheless argues that procedural unconscionability exists because execution of the Arbitration Agreement was a condition of employment, citing *Mayne* and *Robbins v. Comcast Cable Communications*, LLC, 2019 WL 4139297 (W.D. Wash. Aug. 30, 2019). Those cases are distinguishable. In *Mayne*, the court emphasized the difference between conditioning continued employment on signing an arbitration agreement and presenting arbitration as a condition at the outset of employment. 361 P.3d at 268–69. The court explained that an employer may condition employment on signing an arbitration agreement at the beginning of the employment relationship, where the employee is aware of the condition before accepting the position. *Id*. The concern arises when arbitration is imposed midstream in an existing at-will relationship, leaving the employee with no realistic option other than termination. *Robbins* similarly involved circumstances where employees were required to accept arbitration during ongoing employment with no alternative short of quitting. 2019 WL 4139297, *6 (W.D. Wash. Aug. 30, 2019).

That is not the situation here. Plaintiff was presented with the Arbitration Agreement at the outset of his employment as part of the onboarding process. Washington courts have repeatedly held that the mere fact an arbitration agreement is a condition of initial employment does not render it procedurally unconscionable. *See Zuver*, 103 P.3d at 305-307. On this record, Plaintiff has not demonstrated that he lacked a meaningful choice or that the agreement was imposed under unfair or oppressive circumstances. Accordingly, Plaintiff has failed to establish procedural unconscionability.

**2.    Whether the Arbitration Agreement is substantively unconscionable**

Plaintiff argues that the class action waiver contained in UNFI's Arbitration Agreement is substantively unconscionable under Washington law, relying on decisions such as *Oakley* v. *Domino's Pizza, LLC*, 23 Wash. App. 2d 218, 224 (2022) and *Sayaseng v. Geodis Logistics, LLC*,

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 12

2025 WL 2762945 (Wash. App. Ct. Sept. 29, 2025). However, this Court has already determined that Arbitration Agreement is governed by the FAA and the Supreme Court has squarely held that state-law rules conditioning the enforceability of arbitration agreements on the availability of classwide procedures are preempted by the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). In *AT&T Mobility*, the Court invalidated California's rule deeming most class action waivers unconscionable, explaining that requiring class procedures "interferes with fundamental attributes of arbitration" and thus conflicts with the FAA. *Id*. at 344. The Supreme Court reaffirmed that principle in the employment context in *Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018), holding that arbitration agreements requiring individualized proceedings must be enforced according to their terms, even where employees assert wage-and-hour claims. The Court rejected arguments that public policy favoring collective wage enforcement could override the FAA's mandate to enforce individualized arbitration agreements. *Id*. at 519–20.

The reasoning of *Oakley* and *Sayaseng*—that class action waivers frustrate Washington's public policy favoring collective wage enforcement—cannot be reconciled with this binding Supreme Court authority. To the extent those decisions declare class waivers substantively unconscionable because they require individualized proceedings, they impose precisely the type of rule that *AT&T Mobility* held is preempted. Here, the Arbitration Agreement expressly requires that covered claims be resolved on an individual basis. Because the FAA governs this agreement, the Court must enforce it according to its terms. Washington's public policy concerns regarding collective wage claims cannot override the FAA's command that arbitration agreements be enforced as written. Accordingly, the class action waiver is enforceable, and it does not render the Arbitration Agreement unconscionable or void.

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 13

**D.      The Arbitrator Must Decide Any Challenges to Arbitrability**

The Arbitration Agreement requires that any covered dispute "be administered by the AAA under [its] Employment Arbitration Rules." Dkt. No. 18, Ex. A ¶ 4(c). The Ninth Circuit has held that incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties agreed to delegate questions of arbitrability to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Plaintiff does not specifically challenge the delegation provision. Under *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the Court must therefore enforce the delegation clause and refer questions concerning the scope or arbitrability of Plaintiff's claims to the arbitrator.

## IV.      CONCLUSION

For the forgoing reasons, the Court HEREBY GRANTS UNFI's motion to compel arbitration and stays this action under 9 U.S.C. § 3 pending the same. The parties are instructed to provide the Court with a joint status report every 180 days, starting on August 20, 2026, with the status of those proceedings, and/or with a joint status report within 14 days of the resolution of arbitration.

DATED this 20th day of February 2026.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 14